Filed 12/22/15  P. v. Covert CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| THE PEOPLE,<br><br>　　　　Plaintiff and Respondent,<br><br>　　v.<br><br>JAMES COVERT,<br><br>　　　　Defendant and Appellant. | C076486<br><br>(Super. Ct. No. 13F07058) |

Defendant James Covert appeals from the judgment entered following a jury trial resulting in his conviction for willful infliction of corporal injury upon a cohabitant. (Pen. Code, § 273.5, subd. (a).)[1]  In a separate proceeding, the trial court found true allegations that defendant suffered three prior convictions, including a prior domestic

---

[1] Undesignated statutory references are to the Penal Code.

violence conviction, and served a prior prison term. The trial court sentenced defendant to an aggregate term of nine years in state prison.

On appeal, defendant contends the trial court abused its discretion in refusing to reduce defendant's felony conviction to a misdemeanor, refusing to strike defendant's strike prior, and refusing to strike defendant's prior prison term enhancement. We reject these contentions.

Defendant also contends the trial court erred in imposing a mid-term sentence of four years pursuant to section 273.5, subdivision (f), because his previous conviction for domestic violence took place more than seven years before the instant offense. The People concede the error. Accordingly, we remand for resentencing with respect to this issue only. In all other respects, the conviction and judgment are affirmed.

## BACKGROUND

Nicole Gutierrez entered into a romantic relationship with defendant in November 2012. Gutierrez and her three young children lived with defendant until October 2013. They did not have a permanent address; instead, they stayed in motels, and with friends, and family members. Gutierrez and defendant were both drug users.

Gutierrez had no possessions, except her car. On October 17, 2013, defendant and Gutierrez drove to a church to get food. They parked in a parking space reserved for parents dropping off and picking up children from the church daycare center. The pastor of the church, Shannon Fannin, approached the car and told defendant, who was seated in the driver's seat, that he had to move the car. Fannin saw Gutierrez, and a young boy and a young girl in the back seat of the car. Based upon his brief interaction with them, Fannin surmised that the couple was "having a hard time." Defendant moved the car and Fannin left the church to take a group of children to school. Fannin was gone for about 15 minutes.

During Fannin's absence, the director of the daycare, Martha Mayorga, observed some commotion involving a man and a woman in the parking lot. A short time later,

2

Mayorga discovered Gutierrez hiding in a trailer used to store clothes. Gutierrez was scared and said she was "being held" by defendant. Gutierrez asked for help, and Mayorga called 911. Mayorga also treated bite marks on Gutierrez's face and shoulder. Gutierrez had a bite mark on her shoulder, which was bleeding, requiring ice, and a bandage. She also had a bite mark on her face, which was less serious, requiring ice only. While Mayorga was treating Gutierrez, Fannin returned to the school. After speaking with Mayorga, Fannin found defendant in the parking lot and asked him to leave the premises.

Sacramento City Police Officer Bryan Morrison arrived shortly thereafter. Officer Morrison spoke with Gutierrez, noting that she appeared shaken, confused, and concerned that the police had been called. Gutierrez told Officer Morrison that defendant had become increasingly possessive in recent weeks, and that he tried to control Gutierrez by taking the keys to her car and not allowing her to drive it. On the day of the incident, Gutierrez explained, the couple was arguing because defendant told her that he planned to sell her car. Defendant's plan to sell the car upset Gutierrez because the car was the only valuable thing she owned. She grabbed the keys from the ignition, and defendant responded by pulling her head to his chest. As Gutierrez struggled to get away, defendant bit her on the cheek. Defendant also put Gutierrez in a choke hold, and bit her on the right shoulder. Morrison observed faint red marks on Gutierrez's shoulder and throat. Morrison did not see a bite mark on Gutierrez's cheek. Gutierrez told Morrison that her throat hurt, and it was hard for her to talk and swallow. Gutierrez also told Morrison she was leaving town that night because defendant had gang affiliations and she was afraid his family would retaliate against her. She did not want Morrison to take photographs of her injuries, and told him she would do it herself.

Defendant was arrested and charged by amended information with one count of inflicting corporal injury on a cohabitant. (§ 273.5, subd. (a).) The information further alleged that defendant had five prior convictions for (1) domestic violence (§ 273.5), (2)

3

kidnapping (§ 207), (3) terrorist threats (§ 422), (4) robbery (§ 211), and (5) assault with a firearm (§ 245, subd. (a)(2)), all arising from the same incident in April 2001.**2** The information further alleged that defendant's prior convictions for kidnapping and terrorist threats qualified as "strikes" within the meaning of the "Three Strikes" law. (§§ 1192.7, subd. (c), 1170.12, 667, subds. (b)-(i).) The information further alleged that defendant served a prior prison term for a serious felony and failed to remain free of custody for a period of five years following the conclusion of that term. (§ 667.5, subd. (b).) Defendant pleaded not guilty and denied the allegations.

During the trial, Gutierrez was so overcome with emotion that she was initially unable to testify. Upon regaining her composure, Gutierrez claimed she could not remember anything about the incident. Even so, Gutierrez insisted that defendant had never physically harmed her. When asked why she told Officer Morrison that defendant had bitten her, Gutierrez responded that she was "most likely on drugs that day." Later, Gutierrez acknowledged that her relationship with defendant was "sick" and "toxic."

Detective Dennis Prizmich, a domestic violence expert, testified that victims of domestic violence frequently minimize their injuries and refuse to cooperate with law enforcement in the prosecution of their abusers. Prizmich also testified that victims sometimes claim they do not remember incidents of abuse.

The prosecutor introduced jailhouse recordings of conversations between defendant and Gutierrez. The transcripts of the recordings reveal that defendant encouraged Gutierrez not to testify against him. When Gutierrez mentioned that the prosecution had served a trial subpoena on her, defendant suggested that she "[b]ounce" or fail to appear. When Gutierrez observed that she could be arrested for failing to

---

**2** As we shall momentarily discuss, the prior conviction allegations for robbery (§ 211) and assault with a firearm (§ 245, subd. (a)(2)) were eventually dismissed on the prosecution's own motion.

4

appear, defendant opined that the charge would be a misdemeanor. When Gutierrez protested that she could not risk incarceration for her children's sake, defendant responded that he would watch the children in the event that she was made to serve time for failure to appear. During another part of their conversation, Gutierrez told defendant that he should "stay single if you have to." Defendant did not testify at trial.

The jury returned a guilty verdict. During the ensuing court trial, the prosecutor dismissed defendant's prior convictions for robbery and assault with a firearm as having been improperly alleged. The trial court dismissed the strike allegation associated with defendant's prior conviction for making terrorist threats in the interest of justice. The trial court found the remaining prior conviction and prior prison term allegations true.

In anticipation of the sentencing hearing, the probation department prepared a report indicating that defendant had two prior convictions for domestic violence, a juvenile misdemeanor conviction and an adult felony conviction arising from an assault that took place in front of the victim's child in 2001. The probation report also indicated that defendant served nine years in state prison as a result of the last domestic violence conviction and was on parole at the time of the present offense.

Prior to sentencing, defendant filed a motion asking the trial court to reduce the current felony conviction to a misdemeanor on the grounds that Gutierrez's injuries were relatively minor. (§ 17.) Defendant also asked the trial court to strike one or more of his prior strike convictions pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*) on the grounds that the current offense was relatively minor, compared to other domestic violence offenses, and Gutierrez's injuries were minimal. (§ 1385.) Defendant asked the trial court to reduce his current felony conviction to a misdemeanor for the same reasons. (§ 17, subd. (b).) The trial court acknowledged that Gutierrez's injuries were relatively minor but noted that "it's the conduct that's more concerning to the Court. The end result was the injuries, and they weren't as serious as other injuries were. But as the facts played out, she escaped, she got away. And it was the conduct

that's more concerning to the Court, and when I look at his record and what happened in this case. And, especially, with regard to the continuing manipulation and control that the Court heard in the jail calls." The prosecution argued that Gutierrez's injuries were minor because she managed to escape and seek help. The prosecution also drew parallels between defendant's previous domestic violence conviction and the current offense, noting that both involved manipulative and controlling behavior, substance abuse, and a violent attack in front of the victim's child.

The trial court denied the motion, stating: "Okay. With regard to the [section] 17 [subdivision] (b) and the *Romero* motion, the Court has to find that it would be in the interest of justice to strike those strikes – strike that strike. [¶] The Court's looking at the defendant's background, character, prospects to see whether he may be deemed within or outside the spirit of the three strikes law. [¶] Looking to see whether he's been taught through the application of formal sanctions, his criminal conduct was unacceptable, and whether he's failed or learned his lesson. Those factors are set forth in *People versus Williams* [(1998) 17 Cal.4th 148, 161]."

The trial court continued: "His strikes are old, but he did receive a long sentence. And he was on parole at the time that he committed this particular offense. [¶] He previously had been an abscond on parole, had prior domestic violence, and then had a very serious domestic violence. [¶] And then when he's on parole after serving a very lengthy prison sentence, is convicted of committing another crime of domestic violence.

"I agree with Ms. Gutierrez's jail call when she says he just needs to stay single. There's something that happens in relationships. And what's happening is the controlling and manipulation that he is putting on the women that's in his life. [¶] The only thing that's mitigating in [defendant's] case is the extent of the ultimate injuries. But the conduct in which those injuries were incurred, I don't believe it is misdemeanor conduct. Especially in light of his prior criminal history. [¶] And this isn't just a situational matter where he got angry with his girlfriend and struck her, pushed her or hit her. This

6

is a controlling, manipulative relationship. [¶] Because of those factors, the [section] 17 [subdivision] (b) motion and *Romero* motion are denied."

The trial court then sentenced defendant to nine years in state prison, stating: "Okay. [Defendant's] matter is a difficult situation because of his strike priors and the triads of the case, and the count that he was convicted of. [¶] The prior prison commitment and prior one year prior being found true, I have to impose the one year. So issue is . . . low term doubled for four plus one for five; or mid-term of four doubled for eight plus the one; or upper term of five doubled for ten plus the one for 11." The trial court then considered aggravating factors, noting that Gutierrez was particularly vulnerable, inasmuch as defendant had control over her car. The trial court also observed that defendant had engaged in violent conduct before, had numerous convictions, and was on parole at the time of the present offense.

The trial court then considered mitigating factors, noting "the only circumstances in mitigation I could find is the extent of the ultimate injuries: The bite mark on the back. The bite mark on the cheek was gone by the time anybody else saw that. So, I am considering that as something very de minimis, almost scratch-like if at all. [¶] But it was the grabbing, the holding, the resisting, the biting in the back. [¶] Ms. Gutierrez was petrified when she was in contact with the people there at the church . . . .[¶] The children are there when this is happening --- young children in the back seat of their vehicle. [¶] There were children in the other previous case as well. [¶] . . . [¶] And then while in custody and these cases are pending, he puts the tremendous amount of pressure on Ms. Gutierrez. Those jail calls were really telling as far as what their relationship was."

The trial court continued:

"And if this was situational in nature, this was a one time thing, . . . the Court would be more inclined to see some mitigation. But this is a domestic violence case, it's

7

all about manipulation, all about control. It's not situational. Even after he's arrested, he continues to put it all on Ms. Gutierrez.

"All the pressure was on her to: Just bounce, get out of here, it's just a misdemeanor, I'm going home if you do not come in and testify.

"She broke down the minute she took the stand before anybody asked her any questions. This was a victim who has been victimized more than just this one situational incident. It's very – it was a very traumatic experience for her. She was petrified that he would kill her.

"I still have concerns of his ability to be in the community and not commit crimes of violence. The Court has concerns that he poses a great danger to the community.

"He's a serial domestic violence abuser. And I think that's clear.

"I did consider for a long time giving him a low term. But in light of all the aggravating circumstances and being unable to find any mitigation circumstances, absent, the end result of the injuries, I think the situation was extremely dangerous. He poses an extreme danger to the community. And she's lucky she got away, got out of that car."

Accordingly, the trial court sentenced defendant to the midterm sentence of four years, doubled for the prior strike conviction, plus one year for the prior prison term enhancement, for an aggregate sentence of nine years in state prison.

Defendant filed a timely notice of appeal.

## DISCUSSION

### I

*Motion to Reduce Conviction to a Misdemeanor*

Defendant contends the trial court abused its discretion in denying his motion to reduce his domestic violence conviction from a felony to a misdemeanor under section 17, subdivision (b).

Section 17, subdivision (b) gives the trial court discretion to reduce a wobbler offense from a felony to a misdemeanor. (*People v. Mendez* (1991) 234 Cal.App.3d

8

1773, 1779.)  To establish error, a defendant must show a clear abuse of that discretion. An abuse of discretion occurs only when the trial court exceeds the bounds of reason in light of all of the surrounding circumstances.  (*People v. Giminez* (1975) 14 Cal.3d 68, 72.)

In *People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, our Supreme Court explained that the discretion to reduce felonies to misdemeanors in based on a "broad generic standard," i.e., that the discretion exercised must be controlled and guided by fixed legal principles, conform with the spirit of the law, further rather than impede the ends of justice, and must not be capricious, arbitrary, unreasonable, or prejudiced.  (*Id.* at p. 977.)  The court acknowledged that the trial court's discretion is not unlimited, and must be based on reasoned consideration of a particular offender's background and circumstances.  (*Id.* at pp. 977-978.)

In making its determination, the trial court should consider " 'the nature and circumstances of the offense, the defendant's appreciation of and attitude toward the offense, or his traits of character as evidenced by his behavior and demeanor at the trial.' "  (*Alvarez, supra*, 14 Cal.4th at p. 978.)  Further, "the fact a wobbler offense originated as a three strikes filing will not invariably or inevitably militate against reducing the charge to a misdemeanor.  Nonetheless, the current offense cannot be considered in a vacuum; given the public safety considerations underlying the three strikes law, the record should reflect a thoughtful and conscientious assessment of all relevant factors including the defendant's criminal history.  [Citations.]"  (*Id.* at p. 979.)

Here, defendant argues the trial court abused its discretion in refusing to reduce his conviction to a misdemeanor because Gutierrez's injuries were relatively minor. Defendant also argues that the assault "was likely influenced by mutual drug intoxication," and claims "it was an isolated incident according to Gutierrez."  We are not persuaded.

Despite Gutierrez's faulty memory, there was substantial evidence that defendant inflicted physical injury on Gutierrez and the offense was serious. Defendant grappled with Gutierrez, placed her in a choke hold, and bit her twice, causing her to bleed. These acts caused Gutierrez to sustain injuries, which could have been far more serious had Gutierrez not managed to escape and seek help. On this record, the trial court could reasonably conclude that defendant intended to cause more serious injuries, and was only prevented from doing so because Gutierrez managed to escape.

Defendant's possible drug use provides no justification for leniency. Even assuming defendant was under the influence of drugs, his criminal record reveals that he previously assaulted a woman while under the influence of alcohol, and apparently failed to rehabilitate himself, despite a nine-year prison term. On this record, the trial court could reasonably conclude that defendant would be unlikely to succeed in rehabilitation, and would likely repeat the charged offense or harm someone else in a similar manner. Indeed, the trial court expressly found that defendant is a "serial domestic violence abuser" who poses a "great danger to the community." Under the circumstances, we perceive no abuse of discretion.

We flatly reject defendant's contention that the present offense "was an isolated incident according to Gutierrez." Gutierrez said nothing to suggest that the present offense was an "isolated incident." To the contrary, Gutierrez variously denied any memory of the incident and maintained that defendant was *never* violent with her, a claim the trial court evidently disbelieved. There is absolutely nothing in the record to suggest that defendant's attack on Gutierrez was an "isolated incident," and the trial court expressly found that the incident was not "situational," but part of a pattern of controlling and manipulative behavior. Furthermore, defendant's criminal record establishes that he has engaged in such conduct before.

Relying on *Alvarez, supra*, defendant argues that "his 'criminal history, although relevant to the decision, is not dispositive.' (*Alvarez, supra*, 14 Cal.4th at p. 973.)"

10

Contrary to defendant's implicit suggestion, there is nothing in the record to suggest that the trial court focused solely on his criminal history, to the exclusion of other relevant factors. The record confirms that the trial court properly considered the nature and circumstances of the offense, and defendant's appreciation and attitude towards the offense, as evidenced by his attempts to discourage Gutierrez from testifying. Thus, the record confirms that the trial court properly weighed all relevant factors, including defendant's criminal history and public safety. Under the circumstances, we find no abuse of discretion in treating defendant's third domestic violence conviction as a felony, rather than reducing it to a misdemeanor.

## II

### *Motion to Strike Prior Conviction*

Defendant argues the trial court abused its discretion in denying his motion to strike his prior kidnapping conviction pursuant to section 1385 and *Romero.* We disagree.

Rulings on *Romero* motions are reviewed for abuse of discretion. (*People v. Myers* (1999) 69 Cal.App.4th 305, 309 (*Myers*).) Discretion is abused where the trial court's decision is "irrational or arbitrary." (*Id.* at p. 310.) Discretion is also abused when the trial court's decision to strike or not to strike a prior is based on improper reasons (*Romero, supra*, 13 Cal.4th at p. 531; *People v. Benevides* (1998) 64 Cal.App.4th 728, 735, fn. 7, overruled on another ground in *People v. Carmony* (2004) 33 Cal.4th 367, 375) or the decision is not in conformity with the "spirit" of the law. (*People v. Williams, supra,* 17 Cal.4th 148, 161; *Myers, supra* at p. 310.)

"It is not enough to show that reasonable people might disagree about whether to strike one or more of [defendant's] prior convictions. Where the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance. [Citation.]" (*Myers, supra,* 69 Cal.App.4th at p.

11

310.) Once the trial court has exercised its discretion and does not strike a prior conviction, this court's role on appeal is very limited. Thus, it is a rare case in which the trial court abuses its discretion in declining to strike a prior conviction of a recidivist offender.

In making such a determination, we consider "whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams, supra*, 17 Cal.4th at p. 161; see also *People v. Garcia* (1999) 20 Cal.4th 490, 498-499.)

Defendant argues that the trial court failed to give due consideration to a number of mitigating factors that, in defendant's view, weighed in favor of striking the prior strike conviction. Specifically, defendant claims the trial court failed to appreciate that defendant's "abuse of his girlfriend was an isolated incident, minor in nature, and likely driven by drug intoxication." As previously discussed, nothing in the record supports defendant's characterization of the crime as an "isolated incident." To the contrary, the trial court found that defendant is a "serial domestic violence abuser." As we have also discussed, the trial court could reasonably conclude that defendant poses a "great danger to the community," despite the fact that Gutierrez managed to escape with minor injuries. And, as we have also discussed, the trial court could reasonably conclude that defendant's possible substance abuse should not excuse defendant's conduct, inasmuch as he previously assaulted a woman while under the influence of alcohol, and apparently failed to rehabilitate himself. (See *People v. Martinez* (1999) 71 Cal.App.4th 1502, 1511 ["The record demonstrates defendant has had lifelong problems with alcohol and drugs. However, drug addiction is not necessarily regarded as a mitigating factor when a criminal defendant has a long-term problem and seems unwilling to pursue treatment."];

12

*In re Handa* (1985) 166 Cal.App.3d 966, 973-974 ["Drug use or drug addiction at the time of an offense is an example of a disputable factor in mitigation. The sentencing court may find that drug use did not significantly affect the defendant's capacity to exercise judgment or, in the case of an addiction of long standing, that the defendant was at fault for failing to take steps to break the addiction."].)

Here, the record reflects that the trial court was aware of its discretion and the applicable factors it must consider in dismissing a prior strike, and appropriately applied those factors as outlined in *Williams*. In light of defendant's criminal history, the seriousness of his past and present offenses, the fact that he committed the present offense while on parole for a previous domestic violence offense, his manipulative attempts to discourage Gutierrez from testifying, and his seemingly bleak prospects for rehabilitation, we cannot say that the trial court abused its discretion in declining to strike defendant's prior strike convictions.

### III

### *Prior Prison Term Enhancement*

Next, defendant contends the trial court failed to appreciate its discretion to strike his prior prison term enhancement. Specifically, defendant contends the trial court's statement, "I have to impose the one year," reveals that the court "did not understand it had discretion under section 1385 to strike the section 667.5 enhancement." We disagree.

Under section 667.5, subdivision (b), the trial court is required to impose a consecutive one-year term for each prior prison term served for any felony. (*People v. Savedra* (1993) 15 Cal.App.4th 738, 746-747.) Once a prior prison term allegation is found true, the trial court must either impose a consecutive one-year enhancement term pursuant to section 667.5, subdivision (b) or exercise its discretion to strike the allegation pursuant to section 1385. (*People v. Langston* (2004) 33 Cal.4th 1237, 1241; *People v. Campbell* (1999) 76 Cal.App.4th 305, 311; *People v. Jones* (1992) 8 Cal.App.4th 756, 758.) If the trial court exercises its discretion to strike the allegation, it must provide a

13

statement of reasons for doing so.  (§ 1385, subd. (a); *People v. Jordan* (2003) 108 Cal.App.4th 349, 368.)

Here, the trial court's statement, "I have to impose the one year," was technically correct, inasmuch as the prior prison term allegation was found true.  (*People v. Savedra, supra*, 15 Cal.App.4th at pp. 746-747.)  Although the trial court had discretion to strike the prior prison term enhancement, defense counsel never asked the court to do so, and did not object to the imposition of the one-year enhancement term.  We therefore conclude the trial court's statements were not inconsistent with a proper understanding of its discretion.  We further conclude that defendant forfeited any claim based on the prior prison term enhancement by failing to object in the trial court.  (*People v. Scott* (1994) 9 Cal.4th 331, 351.)  Defendant contends defense counsel's failure to object constituted ineffective assistance of counsel.  Again, we disagree.

To establish ineffective assistance of counsel, a defendant must show " ' "that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and that counsel's deficient performance was prejudicial, i.e., that a reasonable probability exists that, but for counsel's failings, the result would have been more favorable to the defendant." ' " (*In re Crew* (2011) 52 Cal.4th 126, 150; see *Strickland v. Washington* (1984) 466 U.S. 668, 694 [80 L.Ed.2d 674, 697, 698].) " 'The burden of sustaining a charge of inadequate or ineffective representation is upon the defendant.  The proof . . . must be a demonstrable reality and not a speculative matter.' " (*People v. Karis* (1988) 46 Cal.3d 612, 656.)

Here, the trial court imposed the one-year enhancement term after denying defendant's motion to reduce the domestic violence conviction to a misdemeanor and rejecting his invitation to strike his prior strike convictions.  The trial court offered a comprehensive statement of its reasons for refusing to reduce the felony to a misdemeanor and refusing to strike the prior convictions, all of which would have applied equally to a hypothetical motion to strike the prior prison term allegation.  There is

14

nothing in the record to suggest that the trial court would have been likely to grant a motion to strike the prior prison term allegation. We therefore conclude that defendant has failed to establish ineffective assistance of counsel.

IV

*Sentencing Error*

Finally, in a supplemental brief, defendant contends the trial court erred in imposing a mid-term sentence of four years under section 273.5, subdivision (f) because the instant offense occurred more than seven years after his last domestic violence offense. The People concede the error, and we accept the concession.

Section 273.5, subdivision (f) provides: "Any person convicted of violating this section for acts *occurring within seven years* of a previous conviction under subdivision (a) . . . shall be punished by imprisonment in a county jail for not more than one year, or by imprisonment in the state prison for two, four, or five years, or by both imprisonment and a fine of up to ten thousand dollars ($10,000)." (§ 273.5, subd. (f)(1), italics added.) Here, the trial court found that defendant was previously convicted of violating section 273.5 on April 11, 2001, more than thirteen years before defendant's conviction for the instant offense. Because defendant's previous conviction occurred more than seven years before the instant conviction, the trial court erred in imposing the mid-term sentence of four years pursuant to section 273.5, subdivision (f). We therefore remand for resentencing.

15

## DISPOSITION

The conviction is affirmed.  The sentence is vacated and the case is remanded to the trial court for resentencing in accordance with this opinion.  In all other respects, the judgment is affirmed.


                                        /s/
                                        Blease, Acting P. J.


We concur:



        /s/
        Robie, J.



        /s/
        Murray, J.